NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
**File Name:  05a0453n.06**
**Filed:  May 31, 2005**
**03-4515/04-3484**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| ANDREA HEGYI, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON A PETITION FOR REVIEW OF |
| ALBERTO R. GONZALES, Attorney General | ) | ORDERS OF THE BOARD OF |
| of the United States, | ) | IMMIGRATION APPEALS |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |
| | ) | |

Before: KEITH, CLAY, and FARRIS,* Circuit Judges.

## I.  OVERVIEW

FARRIS, Circuit Judge.  Andrea Hegyi seeks judicial review of immigration orders denying her applications for asylum, withholding, and relief under the Convention Against Torture and denying her motion to reopen her removal proceedings.  Substantial evidence supports the Board of Immigration Appeals' order denying asylum.  We therefore deny Hegyi's petition for review.  As to Hegyi's petition for review of the denial of her motion to reopen her removal proceedings, we

---

* The Hon. Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

remand to the BIA.

## II. BACKGROUND

Petitioner Andrea Hegyi, with her two-year old daughter, entered the United States as a non-immigrant visitor for pleasure on December 9, 1996, joining her husband who arrived a month earlier. Hegyi, a native and citizen of Hungary, failed to depart the United States at the end of her authorized stay. Instead she took up residence in Ohio, obtaining a social security card under her maiden name. Hegyi evaded detection until she applied for asylum in 1998.

In 2002, she appeared before a judge with the former Immigration and Naturalization Service and conceded that she was subject to removal for overstaying her visa. She sought protection from removal through grants of asylum, withholding, and relief under the Convention Against Torture, claiming that she was a victim of persecution in Hungary because of her Romani or "gypsy" ethnicity. She also requested voluntary departure. The Immigration Judge denied her claim on May 17, 2002, but granted her permission to voluntarily depart from the country provided that she post a voluntary departure bond by May 24, 2002. She failed to post the bond within the required five days.

Hegyi appealed the IJ's decision to the BIA. On November 3, 2003, the BIA dismissed her appeal and extended the period of voluntary departure for an additional 30 days. On November 21, 2003, she moved to stay her removal but did not ask for a stay of her voluntary departure date. We granted her motion to stay removal on March 19, 2004.

2

In the interim, Hegyi's husband became the beneficiary of an approved "I-140" Immigrant Petition for Alien Worker, which permits an alien to pursue a discretionary adjustment of status to that of a lawful permanent resident of the United States. Consequently, Hegyi moved the BIA to reopen her removal proceedings and allow her to seek an adjustment of her status. Her motion was denied. The BIA concluded that Hegyi was statutorily barred from adjusting her status because she failed to depart the country voluntarily.

## III. DISCUSSION

### A. Application for Asylum

Hegyi argues that the IJ and BIA erred in denying her application for asylum. To qualify for asylum, Hegyi must show that she is unable or unwilling to return to her country of origin because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1158(a); 8 U.S.C. § 1101(a)(42)(A). Besides evidence that she was unemployable, Hegyi submitted evidence that she was ostracized and badgered in Hungary because of her gypsy heritage. But slurs and harassment from private individuals do not constitute persecution. *Fisher v. INS*, 291 F.3d 491, 497 (8th Cir. 2002) (citing *Mikhailevitch v. INS*, 146 F.3d 384, 389-90 (6th Cir. 1998)). Hegyi did not introduce evidence that the Hungarian government encouraged or condoned mistreatment of its Romani people; to the contrary, the evidence showed that Hungary is making serious and substantial efforts to address the suffering endured by its Romani population. Hegyi did introduce evidence of an

3

incident in which the local police refused to assist her husband who had been injured at a nightclub. However, the IJ was not required to find that this one incident amounted to persecution, especially since the harm was inflicted by a dance hall employee and not the police. *See Mikhailevitch*, 146 F.3d at 390 (holding that persecution requires "more than a few isolated instances of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty").

Hegyi also argues that the IJ and BIA erred by not addressing separately whether she had a well-founded fear of persecution in Hungary. The Government counters that Hegyi's case for asylum was based entirely on her past experiences in Hungary. Failure to establish past persecution precludes a presumption of future persecution. *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004). Hegyi was therefore required to introduce evidence of a well-founded fear of future persecution if she returned to Hungary. *Id*. She did not.

## B. Motion to Reopen

The BIA refused to reopen Hegyi's case on the basis that she was granted 30 days to voluntarily depart and she failed to do so. According to the BIA, Hegyi is barred from obtaining any further relief. In reaching that conclusion, the BIA did not mention that Hegyi failed to post a departure bond within five days of the grant of voluntary departure. Hegyi argues that the IJ's order was vacated automatically at the end of the fifth day because of her failure to post a bond and that the removal order took effect the next day. *See* 8 C.F.R. § 1240.26(c)(3). Hegyi presents a strong

4

argument that she did not overstay her voluntary departure period at all because one did not exist. The BIA did not consider Hegyi's argument. We therefore remand to the BIA for it to reconsider the motion to reopen.[1]

**AFFIRMED in part and REMANDED**.

---

[1] Alternatively, Hegyi contends that this Court should construe her motion to stay removal, which was filed on November 21, 2003, as including a timely motion to stay voluntary departure. We decline to address Hegyi's alternative argument.