**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0486n.06**
**Filed: June 9, 2005**

**No. 04-3451**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| IRINA KOSHKINA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES BOARD OF IMMIGRATION |
| ALBERTO GONZALES, United States | ) | APPEALS |
| Attorney General, | ) | |
| | ) | |
| Respondent. | ) | |

Before: SILER and SUTTON, Circuit Judges; O'MEARA, District Judge.[*]

SUTTON, Circuit Judge. Irina Koshkina, a citizen of Kazakhstan, claims that she suffered

persecution in her native country (because she is Russian and an Eastern Orthodox Christian) and

seeks asylum in the United States as a result. Because she has not established a well-founded fear

of persecution—primarily because the events on which she relies to support her claim of past

persecution either cannot be attributed to the government or do not rise to the level of

persecution—we deny her petition for review.

---

[*] The Honorable John Corbett O'Meara, United States District Judge for the Eastern District of Michigan, sitting by designation.

I.

On September 23, 1998, Koshkina entered the United States as a visitor. Although she received permission to extend her stay until September 1999, she remained in the United States beyond that date, and in May 2000 the government charged her with being a removable alien. At her hearing, she conceded removablity but applied for asylum, withholding of removal and protection under the Convention Against Torture.

Koshkina filed two asylum applications and testified orally at a hearing before the immigration judge (IJ). In her first application, she complained about discrimination and harassment in several employment settings and about an assault and "threat to [her] life and health." JA 74. In 1994, for example, while Koshkina served as a panelist on a televised musical contest, the contest producer threatened to exclude her from the panel unless she engaged in "intimate relations" with him. JA 75. She refused and subsequently lost her position as a panel member. While working at a television station from 1994 to 1997, the station cut her salary in half and threatened to fire her because the station's president (who happened to be the niece of Kazakhstan's leader) disfavored Koshkina's political and religious views. The station eventually fired Koshkina. While working at a different television station in 1997 as part of the "Good Morning, Moscow" program, JA 42, the program's producer threatened to fire her unless she engaged in "intimate relationships" with him, JA 75, and later threatened her with "harsh treatment," JA 76. Approximately a week after these threats, two men attacked Koshkina, struck her on the head, closed her mouth with a piece of cloth and threatened that she would be killed if she "cause[d] troubles to [their] mutual acquaintance" or

told anyone about the attack. JA 76. During her testimony at the hearing (but not in her application), she stated that one of the men raped her during this encounter. In 1998, three men came to her door and threatened her again.

Her second application and her testimony at the hearing focused on different events. Reaching back further in her personal history, she testified that she was born in Kazakhstan in 1962 (when the country was part of the Soviet Union) and that she classified herself as a Russian and as a Christian. When Koshkina was only one or two years old, a Kazakh neighbor killed Koshkina's uncle (who was himself only seven years old) because the neighbor "didn't like Russian settlers." JA 33. When Koshkina was five years old, two Kazakh boys hit her in the stomach while saying that she "was a Russian who should be beaten." JA 62. Several years later, when Koshkina was eight or nine, her father was arrested and jailed for one year under false charges relating to his medical practice. The leadership of the medical clinic wanted to remove him because he was Russian, Koshkina claims, and as a result they "fabricated a case" against him. JA 36; *see also* JA 37 (stating that he was put in prison because "Kazak[hs] simply hated him"). While her application stated that her father was "murdered because of his religion" after his release from jail, JA 62, Koshkina gave a different account at the hearing, making no mention of murder: When asked at the hearing how he died, she replied, "He was sick in the, in the prison. His health was completely bad." JA 37.

In her second application and at the hearing, Koshkina also relied on incidents that occurred after she became an adult. In 1994, she was struck by a piece of glass thrown by a group of Kazakhs

(or presumably someone in the group) who were "screaming for everyone to get out of their country." JA 40. The resulting cut caused a scar under her eye. In 1995, she received another facial scar when she was hit by "some little pebbles and stone[s]" thrown by Muslim students on her way home from church. JA 41. (In her first application, she claimed the incident happened when she was entering church and that she was hit by some wood.)

After reading both applications and hearing her testimony, the IJ concluded that Koshkina was not a credible witness. He described her testimony as "a continued embellishment," JA 19, and found that she had failed to establish that she had been persecuted in the past on account of race, religion or political opinion or that she had shown a likelihood of future persecution should she return to Kazakhstan. The Board of Immigration Appeals affirmed. It reasoned that the incidents, even if true, did not rise to the level of persecution because Koshkina did not show that the government was responsible for the incidents or "that the attackers were those that the government was unwilling or unable to control." JA 3. In this appeal, Koshkina challenges only the denial of her asylum request, making no mention of the denial of her request for withholding of removal or of her request for protection under the Convention Against Torture.

## II.

When considering a petition for review of a Board of Immigration Appeals decision, we give fresh review to the Board's legal conclusions. *Mostafa v. Ashcroft*, 395 F.3d 622, 624 (6th Cir. 2005). The Board's factual findings, by contrast, are reviewed under a substantial evidence

standard, which "requires us to uphold the Board's findings as long as they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Id.* (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). To reverse the Board's "factual determinations, the reviewing court must find that the evidence not only supports a contrary conclusion, but indeed *compels* it." *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 705 (6th Cir. 2005).

To qualify as a refugee, an applicant for asylum must be "unable or unwilling to return to . . . [the applicant's] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101. An applicant who "can establish that he or she has suffered persecution in the past . . . shall also be presumed to have a well-founded fear of persecution" if returned to the country in the future. 8 C.F.R. § 208.13(b)(1). To establish a well-founded fear of persecution without such a showing of past persecution, an "applicant's fear of persecution must be both subjectively genuine and objectively reasonable." *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998).

Persecution is "the infliction of harm or suffering by the government[] or persons a government is unwilling or unable to control." *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004) (citing *In re Kasinga*, 21 I. & N. Dec. 357, 365 (BIA 1996)). It is "an extreme concept that does not include every sort of treatment our society regards as offensive," *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004), and as such "harassment or discrimination without more does not rise to the level of persecution," *Mikhailevitch*, 146 F.3d at 389–90.

Because the Board did not rely on the IJ's finding that Koshkina lacked credibility, we turn to the Board's legal explanation for denying relief, which in our view supports the Board's decision. Even if Koshkina and her family experienced each of these unfortunate incidents, they were not caused by the government or by persons the government was unable or unwilling to control. *See Pilica*, 388 F.3d at 950 ("[P]ersecution [is] the infliction of harm or suffering *by the government[] or persons a government is unwilling or unable to control.*") (emphasis added). The murder of her uncle approximately forty years ago resulted from the actions of a single neighbor, not the government, and Koshkina does not explain how the government bears responsibility for the incident. The same is true of the death of her father (whether he died of illness or whether he was murdered). In neither event does she explain who was responsible for her father's death or why the government ought to be held accountable for it. *See* JA 62 (stating only that "my father was murdered because of his religion").

In alleging that she was raped when she was warned not to report to authorities the sexual harassment and discrimination she suffered at the hands of the television producer, Koshkina presents no evidence to establish that the government either caused the injury or was unable or unwilling to control those who did. Indeed, the warning she received—that she would be in peril if she told the authorities what happened—suggests the rape was not done with government approval and that the government would have been willing to prosecute the crime if it had been made aware of what happened. The remaining allegations of assault (the punch in the stomach when she was five, the glass that hit her under the eye and the wood or stone that hit her in the face) and of

employment discrimination (sexual harassment at work and threats to fire her for refusing sexual advances) are both not attributable to the government and are both at any rate not serious enough to rise to the level of persecution under our precedents. *See Kacaj v. Gonzales*, No. 04-3054, 2005 U.S. App. LEXIS 8978, at *8–10 (6th Cir. May 17, 2005) (comparing cases finding persecution with those finding no persecution).

Koshkina relies upon her allegations of past persecution as her only basis for a fear of future persecution. *See* Koshkina Br. at 16 ("Based on her past experiences, Irina Koshkina had a reasonable fear of future persecution."). Because these incidents do not qualify as persecution, as the Board correctly determined, and because she fails to argue that she has any other ground for fearing future persecution, she has failed to show that she is entitled to asylum.

III.

For these reasons, we affirm.