NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0777n.06
Filed: September 7, 2005
File Name: 05a0777n.06
Filed: September 7, 2005

No. 03-3261

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| IVAN GROMOVIK, | ) | |
| | ) | |
| *Petitioner,* | ) | |
| | ) | |
| v. | ) | On Petition for Review of an Order |
| | ) | of the Board of Immigration |
| ALBERTO GONZALES, Attorney General, | ) | Appeals |
| | ) | |
| *Respondent*. | ) | |

**Before:** **BOGGS, Chief Judge; SUTTON, Circuit Judge; and RICE, District Judge.**[*]

**PER CURIAM.** Ivan Gromovik petitions this court to review the denial by the Board of Immigration Appeals of his application for asylum and associated relief. Because the Immigration Judge had substantial evidence to support her determination that petitioner did not endure past persecution, we deny the petition for review.

## I

Petitioner was born on July 9, 1965 in the Ukraine. Gromovik earned a degree in mechanical engineering and, prior to leaving the country, worked as a manager for a private company, directing

---

[*]The Honorable Walter Herbert Rice, United States District Court Judge for the Southern District of Ohio, sitting by designation.

roughly one hundred employees. He entered the United States in June 1996 on a tourist visa. He applied for asylum in December of that year, shortly before his visa expired, claiming he has been persecuted in the Ukraine because he is Jewish.

Gromovik claims that he has been harassed and mistreated throughout his life in the Ukraine. He was teased by other students when he was in school and, in one instance, attacked. He had to leave school temporarily to serve in the Soviet military from 1983 to 1985, where he was also beaten. Beginning in 1992, petitioner periodically received threatening notes. He took one such note to the police who, according to Gromovik, "just looked at [it] and said nothing." His apartment was robbed on two occasions, but there is no indication that those instances were motivated by anti-Semitism. This incident was reported to the police, who did not find the perpetrators.

Most significant is an incident in 1995. Three men assaulted Gromovik while he was returning from work, during which they used ethnic slurs about Jews. Petitioner was beaten so severely that he was knocked unconscious. He was taken to the hospital, and filed a police report. Later that day, Gromovik received a phone call threatening his and his family's lives if he did not withdraw the report. Gromovik alleges that when he went to do so the next day, the police officers laughed and ridiculed him.

Gromovik appeared before an Immigration Judge ("IJ") with the assistance of counsel and an interpreter. Following a hearing, the IJ denied Gromovik any relief because, while she found him generally credible, she concluded that the events described amounted to only harassment, not persecution. He timely appealed that decision to the Board of Immigration Appeals ("BIA"), which affirmed without opinion.

**II**

The decision to grant asylum is a two-step inquiry. *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003). The first step is whether the applicant qualifies as a refugee. Only if the petitioner qualifies as a refugee may the Attorney General exercise his discretion and grant asylum. *Ibid.* In this case, the IJ and the BIA ended the inquiry at the first step by determining that Gromovik did not qualify as a refugee. It is this determination that we now review on appeal.

A refugee is an alien who is "unable or unwilling to return to . . . [his] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Where, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision directly. *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003). We review her determination that Gromovik did not suffer persecution under the substantial evidence test. *Mikhailevitch v. INS*, 146 F.3d 384, 388-90 (6th Cir. 1998); *accord Gjokic v. Ashcroft*, 104 F. App'x 501, 504-05 (6th Cir. 2004). In the immigration context, that test has been construed to allow reversal only if "the evidence presented by [the petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). This standard has since been codified by regulations that state that this court can reverse only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also*

*Yu v. Ashcroft*, 364 F.3d 700, 702-03 & n.2 (6th Cir. 2004) ("officially adopt[ing]" substantial evidence test as articulated in § 1252(b)(4)(B)).[1]

Neither statute nor regulation defines the term "persecution," *Namaharo v. Ashcroft*, 76 F. App'x 95, 96 (6th Cir. 2003), and the line between persecution, which is necessary for refugee status, and mere harassment, which is insufficient, is often difficult to draw. *Kacaj v. Gonzales*, 132 F. App'x 584, 587 (6th Cir. 2005). As difficult as the task may be, significant guidance is found in previous decisions by this court. *See ibid.* (collecting cases). We look to the "overall context" of petitioner's claimed events of persecution in determining whether the petitioner's account rises to the level of persecution. *Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005). Though persecution may stem from the actions of persons the government is "unable or unwilling to control," *Dizdaric v. Gonzales*, 128 F. App'x 501, 503 (6th Cir. 2005), this court has observed that "[i]t is not sufficient that the applicant has been subjected to indiscriminate abuse . . . or has been the victim of a random crime. Instead, the applicant must establish that he or she was specifically targeted by the government for abuse based on one of the statutorily protected grounds." *Gilaj*, 408 F.3d at 285.

Reviewed against these principles, petitioner's claim fails. In this case, the IJ considered the circumstances under which Gromovik was assaulted, his advanced education and successful career,

---

[1]The grounds for withholding of removal are the same as for asylum, except that instead of proving a "well-founded fear of persecution," 8 C.F.R. § 208.13(b), the applicant "must demonstrate a clear probability that he would be subject to persecution." *Mikhailevitch*, 146 F.3d at 391. In asserting he is entitled to withholding of removal, Gromovik faces the same question of whether he was subjected to persecution, just with "a more stringent showing of truth." *Ibid.* Thus, a determination that Gromovik is not eligible for asylum also means he is ineligible for withholding of removal. *Ibid.*

and the Ukrainian government's evolving attitude towards anti-Semitism. Gromovik reports being attacked on three occasions over a timespan of at least twelve years. Given the length of time between these incidents and the government's attenuated relationship to them, we have difficulty seeing how the government or anyone else "sought [petitioner] out." *Pilica v. Ashcroft*, 388 F.3d 941, 955 (6th Cir. 2004); *Gilaj*, 408 F.3d at 285. Two of the attacks occurred while petitioner was in secondary school and the Soviet Army. That is, they occurred in the early 1980s under a different regime. The one injury described by petitioner from these incidents is that, after he was assaulted in the army, he lost a tooth. The beating he suffered in 1995, the most serious assault and the one event proximate to his leaving the country, is best described as a "random crime," *ibid.*, albeit one motivated by anti-Semitic animus. Petitioner therefore appears to have been attacked three times over the course of twelve years by unrelated groups of individuals who share no bond other than anti-Semitism, and who did not focus on Gromovik beyond learning of his religion. In this sense, Gromovik's account of life in the Ukraine can be analogized to a political protester who, even if arrested three times, cannot necessarily assert persecution because he was not sufficiently targeted. *See Kacaj*, 132 F. App'x at 588 (reaching similar conclusion in case involving political protester and collecting cases).

Regardless, because Gromovik was attacked in each instance by private individuals, rather than government actors, he must demonstrate that the government was unable or unwilling to protect him. While an isolated instance of governmental acquiescence to an assault does not compel the conclusion that a petitioner was persecuted, *see Hegyi v. Gonzales*, Nos. 03-4515, 04-3484, 2005 WL 135950, at *1 (6th Cir. May 31, 2005) (unpublished disposition) (affirming a finding of no

persecution when police refused to assist petitioner's husband following an assault), our review of the record does not compel the conclusion the government was unable or unwilling to protect Gromovik at any point.

Petitioner primarily directs us to the events following his 1995 attack. After Gromovik reported the incident to the police, he received a telephone call threatening him and his family if he did not withdraw the report. When he went to the police station the next day, the police apparently laughed at him. While such behavior by the police is deplorable, it does not compel the conclusion that they were unwilling to investigate the crime. Both the facts surrounding the incident and his testimony about his encounters with the police lend support to the conclusion that the police were inclined to investigate. The fact that Gromovik was urged to rescind the report is some evidence that the police would have tried to find his assailants. *Koshkina v. Gonzales*, No. 04-3451, __ F. App'x __, 2005 WL 1389574 (6th Cir. June 9, 2005) (unpublished disposition). Similarly relevant are Gromovik's previous decisions to contact the police following the robberies of his house and the threatening letters he received. That he saw purpose in repeatedly reporting incidents to the police indicates that he felt there was at least some chance they would investigate the incident. Parts of his testimony further support that conclusion. While Gromovik testified that the police laughed at him, the rest of his testimony does not indicate an unwillingness to investigate the crime. He reports that, after filing his report, they said they would "take care of it." When Gromovik rescinded it the next day, they asked why. Thus, while some of the evidence suggests an unwillingness to help petitioner, other parts do not. In other words, the evidence does not compel a conclusion one way or another.

The same is true of the incidents that occurred in school and the army. The day after he was attacked in the army, Gromovik was contacted about the incident by a commanding officer, who asked if Gromovik knew his assailants. Such behavior is not indicative of someone turning a blind eye to the attack. When he was attacked in school, Gromovik reported the incident to a teacher. Even assuming the teacher was in a capacity similar to a government actor, Gromovik still cannot show that the teacher condoned the attack. The teacher told petitioner that he would have to deal with his classmates' anti-Semitism on his own. This harsh, but probably realistic advice regarding schoolyard bullying does not mean the teacher wished these attacks on petitioner. As with the police, Gromovik's decision to report the incident to the teacher is some indication that the teacher was not hostile to his concerns. His high levels of academic achievement further belie any notion of teacher bias against him. In short, the evidence regarding these incidents resembles the evidence about the police's reaction to the 1995 assault. In all three instances, the IJ's decision is supported by substantial evidence.

For these reasons, it is simply not the case that "any reasonable adjudicator would be compelled to conclude" that Gromovik suffered persecution. 8 U.S.C. § 1252(b)(4)(B). We accordingly DENY the petition for review.