NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0116n.06

Case No. 25-3282

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 10, 2026
KELLY L. STEPHENS, Clerk

CATARINA JOSEFINA HERNANDEZ-
CALEL,

      Petitioner,

v.

PAMELA BONDI, Attorney General,

      Respondent.

)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW FROM
THE UNITED STATES BOARD OF
IMMIGRATION APPEALS

OPINION

Before: MOORE, GIBBONS, and BLOOMEKATZ, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Catarina Josefina Hernandez-Calel, a young

Guatemalan woman living in the United States, applied for asylum, withholding of removal, and

protection under the Convention Against Torture ("CAT"). Despite finding Hernandez-Calel

credible, the Immigration Judge ("IJ") denied her three claims, finding that she had failed to

establish the requisite nexus between her alleged harm and a protected ground. On appeal, the

Board of Immigration Appeals ("BIA") subsequently affirmed the IJ's denial of the asylum and

withholding-of-removal claims and did not reach the merits of the CAT claim, deeming it waived.

Hernandez-Calel now seeks our review of the BIA's decision.

We deny Hernandez-Calel's petition for review.

**I.**

**A. Factual Background**

Catarina Josefina Hernandez-Calel is a native and citizen of Guatemala who entered the

United States as an unaccompanied minor in April 2015. Given the lack of opportunities and

financial resources available in her rural village, where she lived with her mother, Hernandez-Calel moved to Guatemala City in 2012 when she was approximately fourteen years old to seek work cleaning houses.[1] Hernandez-Calel ended up working as a live-in housekeeper for a couple with no children. Hernandez-Calel alleged that, during her employment, her female boss often hit her whenever she was unable to complete physically demanding orders, such as cleaning or carrying heavy objects, given her small frame. As further retribution, Hernandez-Calel's boss would sometimes also refuse to pay her salary. Moreover, whenever her boss hit her, Hernandez-Calel would express her desire to leave and return to her native village, but she was unable to do so due to her lack of funds.

During this period, an older male taxi driver,[2] whom Hernandez-Calel did not know, started stalking and threatening her in a street close to her job. This began in late 2014 or in January 2015. Hernandez-Calel believed the taxi driver wanted to sexually abuse her and take her away because he had told her he liked her. On one occasion, the taxi driver grabbed Hernandez-Calel, pulled her by the hair, showed her a pistol, and let her go only because she screamed. She often ran into him whenever she went out to buy food or run errands. Hernandez-Calel never reported him to the police because he threatened to kill her if she ever did.

Given the mistreatment she endured at her job at the hands of her boss and the taxi driver's constant harassment, Hernandez-Calel gathered the funds to travel home and quietly left early one morning while her boss was asleep. Shortly after returning to her hometown, located approximately eight hours from Guatemala City, Hernandez-Calel bumped into the taxi driver at

---

[1] We cite Hernandez-Calel's hearing testimony, as she was found credible by the IJ.

[2] Hernandez-Calel testified that, as far as she knew, this individual did not work for the Guatemalan government.

a store near her mother's house. Upon seeing Hernandez-Calel, the taxi driver reminded her that he could easily find her if he wished because he had contacts. She does not know how he found her, as she does not recall ever revealing to him her name or hometown, and claims that her appearance or style of dress would not have indicated her home.

This encounter, the last one that Hernandez-Calel had with the taxi driver, prompted her to run away from the store. After explaining the situation to her mother and letting her know she was scared, Hernandez-Calel asked her to call her brother to discuss emigrating to the United States. Approximately two weeks later, Hernandez-Calel left her village and began her journey to the United States on March 25, 2015.

**B.  Procedural Background**

Seventeen-year-old Hernandez-Calel entered the United States without inspection on April 8, 2015, after crossing the Mexico-U.S. border via Yuma, Arizona. The Department of Homeland Security ("DHS") took her into custody and served her with a notice to appear ("NTA") in removal proceedings that charged her with removability as a noncitizen[3] present in the United States without being admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Hernandez-Calel remained in DHS custody for a month.

To be released, Hernandez-Calel needed a sponsor, and Martha, one of her older sisters living in Dover, Ohio, served in that role. On May 9, 2015, Hernandez-Calel was released and subsequently transferred to Ohio. Approximately five weeks later, DHS initiated removal proceedings against her. Hernandez-Calel admitted to the allegations and charges contained in her NTA and also conceded removability. Guatemala was designated as the country of removal.

---

[3] We use the term "noncitizen" as equivalent to the statutory term "alien." *Santos-Zacaria v. Garland*, 598 U.S. 411, 414 n.1 (2023).

Hernandez-Calel had a total of five hearings before an IJ. The first was held on July 6, 2015, but the IJ rescheduled it to January 14, 2016, to allow Hernandez-Calel to retain counsel. At Hernandez-Calel's second hearing, her attorney requested a continuance to allow her to file for asylum with the U.S. Citizenship & Immigration Services ("USCIS"), so the IJ continued the hearing until May 12, 2016. Hernandez-Calel subsequently filed an application for asylum, withholding of removal pursuant to Section 241(b)(3) of the Immigration and Nationality Act ("INA"), and withholding of removal under the CAT. Hernandez-Calel's application was based on being a member of a particular social group in Guatemala. She is a female indigenous Mayan Quiche—a group identifiable by its distinctive traditional clothing and indigenous language, and often targeted and vulnerable to violence.

Because Hernandez-Calel's asylum application was still pending at the time of her third hearing, she requested another continuance. The IJ granted it and rescheduled her hearing to November 10, 2016. At her fourth hearing, Hernandez-Calel requested that the IJ administratively close her case, given that she had not yet been interviewed by USCIS and no decision had been made on her asylum application. The IJ acquiesced and decided not to schedule any more hearings until Hernandez-Calel's asylum application had been adjudicated.

It was not until February 10, 2020, that USCIS informed Hernandez-Calel that it had found her ineligible for asylum and thus could not grant her relief. Specifically, USCIS found that Hernandez-Calel had not established that "any harm [she] experienced in the past [was] on account of one of the protected characteristics in the refugee definition (race, religion, nationality, membership in a particular social group, or political opinion)." AR 260. Similarly, USCIS found that Hernandez-Calel had failed to establish that any future persecution she feared could be on account of the same. In its decision letter, USCIS further informed Hernandez-Calel that: (i) her

case was being returned to the IJ to continue immigration proceedings; (ii) it was not a denial of her asylum application; (iii) she could renew her request before the IJ at her next hearing; and (iv) its determinations were not binding on the IJ.

On August 25, 2021, Hernandez-Calel appeared before an IJ. In an oral decision, the IJ denied her application for asylum, withholding of removal, and CAT protection. Although Hernandez-Calel was deemed credible, the IJ determined that she did not demonstrate the requisite level of harm for past persecution. The IJ found that Hernandez-Calel failed to show that her alleged harm had been inflicted by the government of Guatemala or any actor it was unable or unwilling to control. The IJ also found that Hernandez-Calel could not prove that she would be unable to relocate internally within Guatemala. And most fatally to her claims, Hernandez-Calel failed to establish a nexus between a protected ground for her past persecution or a well-founded fear of future persecution.

Since Hernandez-Calel did not satisfy the lower burden of proof as to persecution required for asylum and the denial did not hinge on nexus alone, the IJ determined that it necessarily followed that she also failed to satisfy the more stringent "clear probability of persecution standard" required for withholding of removal. And as for Hernandez-Calel's CAT claim, the IJ rejected it because it found that her evidence fell short of demonstrating that it was more likely than not that she would be tortured if removed to Guatemala and that the Guatemalan government would consent or acquiesce to her torture.

On September 10, 2021, Hernandez-Calel appealed the IJ's decision to the BIA. On March 27, 2025, the BIA dismissed Hernandez-Calel's appeal and affirmed the IJ's decision to deny her asylum and withholding-of-removal claims by focusing on Hernandez-Calel's failure to establish "the requisite nexus between her past harm and feared future harm and a protected ground." AR 4.

As such, the BIA "decline[d] to address the remaining appellate arguments regarding asylum and withholding of removal." AR 5. Regarding Hernandez-Calel's CAT claim, the BIA deemed it waived because she had not meaningfully challenged its denial. Hernandez-Calel timely appealed the BIA's decision.

## II.

On appeal, Hernandez-Calel raises seven issues. They are whether the BIA: (1) erred in concluding that Hernandez-Calel's proposed particular social group was not cognizable; (2) failed to adequately consider if the harm Hernandez-Calel suffered and her fears were on account of a protected ground; (3) applied an erroneous legal standard by requiring specific evidence of a persecutor's motive beyond Hernandez-Calel's membership in her proposed social group; (4) improperly dismissed Hernandez-Calel's claim under the CAT; (5) failed to address relevant country conditions evidence constituting legal error and a violation of due process; and (6) abused its discretion in summarily denying humanitarian asylum. Finally, (7) she raises the issue of whether it is proper to challenge defective charging documents for the first time before us.[4]

In her initial appeal before the BIA, Hernandez-Calel raised only three issues. These included whether the IJ had erred in finding that she: (1) had failed to demonstrate she suffered past persecution on account of a protected characteristic; (2) had not established a well-founded fear of future persecution on account of a protected characteristic; and (3) could reasonably

---

[4] During the merits hearing on August 25, 2021, the IJ asked Hernandez-Calel: "Are you going to raise any issues with respect to [the] deficient Notice to Appear?" after noticing that the NTA did not include the time or the place of the hearing. AR 112. Hernandez-Calel's counsel replied: "No, Your Honor." *Id.* True to his word, counsel did not raise this claim before the BIA. Since Hernandez-Calel was required to present this specific issue on her notice of appeal filed with the BIA, *see Cuevas-Nuno v. Barr*, 969 F.3d 331, 334 n.3 (6th Cir. 2020), but failed to do so, "we cannot decide it here," *see Menjivar-Bonilla v. Bondi*, 2025 WL 608797, at *1 (6th Cir. Feb. 25, 2025).

internally relocate within Guatemala.[5]  And since "[w]e look to a petitioner's brief before the BIA to determine which claims she adequately raised," *Simon-Domingo v. Garland*, 2024 WL 4850698, at *3 (6th Cir. Nov. 21, 2024) (citing *Cuevas-Nuno*, 969 F.3d at 334), we note that Hernandez-Calel did not raise any other claim on appeal to the BIA.[6]

Before seeking our review, a noncitizen must "exhaust[] all administrative remedies available to [her] as of right."  8 U.S.C. § 1252(d)(1).  "[T]o give the agency a fair and full opportunity to adjudicate their claims," *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), an "immigrant[] must present the specific issue that [she] seek[s] to raise in court in the notice of appeal to the Board," *Singh v. Rosen*, 984 F.3d 1142, 1155 (6th Cir. 2021).  "If [she] fail[s] to raise the issue there, we cannot decide it here."  *See Menjivar-Bonilla*, 2025 WL 608797, at *1.  "This exhaustion requirement is not jurisdictional, but instead a claim-processing rule subject to either waiver or forfeiture."  *Mazariegos-Rodas v. Garland*, 122 F.4th 655, 664 (6th Cir. 2024).  "And where . . . the government has raised the exhaustion requirement, we must enforce it."  *Id.* at 666.

Here, the Respondent has timely and properly objected to Hernandez-Calel's failure to comply with the exhaustion requirement in 8 U.S.C. § 1252(d)(1).  And since we must enforce this mandatory rule, we are precluded from addressing most of Hernandez-Calel's issues.  *See id.*

---

[5] Because Hernandez-Calel's asylum and withholding of removal claims fail to show the requisite nexus, we need not reach the relocation issue.  *See Bonilla-Morales v. Holder*, 607 F.3d 1132, 1137 (6th Cir. 2010); *Amaya-Hernandez v. Garland*, 2022 WL 1112771, at *3 (6th Cir. Apr. 14, 2022) ("The BIA reasonably determined that [Petitioner] did not show that she was persecuted on account of her membership in a particular social group . . . .  This requirement is dispositive of [Petitioner]'s asylum and withholding claims, so we need not consider the BIA's other bases for denying asylum and withholding of removal.") (citation modified).

[6] Respondent properly raised, and we agree, that we "may not reach the merits of Hernandez-Calel's CAT claim because the Board determined that she waived the issue and thus the issue is unexhausted."  CA6, Respondent Br., at 10; *see Simon-Domingo*, 2024 WL 4850698, at *4 ("Because [Petitioner] did not raise any CAT claims before the BIA, she failed to exhaust any such claim.").

Thus, we will address only whether substantial evidence supports the BIA's ruling that Hernandez-Calel failed to establish the requisite nexus between her past and future alleged harm and a protected ground.

### A. Standard of Review

We have jurisdiction under 8 U.S.C. § 1252 to review the BIA's final order of removal. *See Mohammed v. Bondi*, 129 F.4th 988, 989–90 (6th Cir. 2025). We review the BIA's decision as the final agency determination when the BIA has reviewed the IJ's decision and issued a separate opinion. *Zometa-Orellana v. Garland*, 19 F.4th 970, 976 (6th Cir. 2021). We also review the IJ's decision to the extent the BIA adopted its reasoning. *Id.* Here, "the BIA issued its own opinion but adopted the IJ's reasoning in some places. Where this occurs, we review the IJ's decision and reasoning." *Cobo-Lopez v. Bondi*, 2025 WL 2105654, at *2 (6th Cir. July 28, 2025).

For both the BIA and IJ decisions, we consider factual findings under a substantial evidence standard, under which "we affirm so long as the Board's finding 'is supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Sabastian-Andres v. Garland*, 96 F.4th 923, 929 (6th Cir. 2024) (quoting *Zhao v. Holder*, 569 F.3d 238, 247 (6th Cir. 2009)). And we will "only reverse if 'the evidence not only supports a contrary conclusion, but *compels* it.'" *Id.* (quoting *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007)). We review legal conclusions de novo. *Id.*

### B. Asylum & Withholding-of-Removal Claims

Asylum and withholding of removal can protect noncitizens from removal based on their membership in a protected group. To be eligible for asylum, a petitioner must show that she is "unable or unwilling" to return to her country of origin because she was persecuted or has a well-founded fear of persecution on account of her race, religion, nationality, political opinion, or

membership in a particular social group. 8 U.S.C. § 1158(b)(1)(A) (adopting eligibility requirements in 8 U.S.C. § 1101(a)(42)(A)). "Persecution is the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim." *Sebastian-Sebastian v. Garland*, 87 F.4th 838, 847 (6th Cir. 2023) (citation modified). As for withholding of removal, the Attorney General may not remove a noncitizen to a country if that person's "life or freedom would be threatened in that country because of" her "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A).

Both asylum and withholding-of-removal claims require a petitioner to establish a nexus between her "risk of persecution in the country of removal" and her "membership in a protected group." *Patel v. Bondi*, 131 F.4th 377, 381 (6th Cir. 2025). Accordingly, a petitioner "must provide some evidence" that "the government, or persons the government is unwilling or unable to control," sought "to overcome a [protected] characteristic of the victim." *Sebastian-Sebastian*, 87 F.4th at 847 (citation modified). "The standard for showing a nexus differs for asylum and withholding-of-removal claims." *Romero Morales v. Bondi*, 2025 WL 3094124, at *3 (6th Cir. Nov. 4, 2025). While asylum "requires that a statutorily protected ground be at least one central reason for alleged persecution," withholding of removal "requires only that a statutorily protected ground be a reason for alleged persecution." *Sebastian-Sebastian*, 87 F.4th at 851 (citation modified). Because "'a reason' is different from—and weaker than—'a central reason,' an applicant who cannot satisfy the nexus requirement for her withholding-of-removal claim necessarily cannot satisfy the more stringent requirement for her asylum claim." *Romero Morales*, 2025 WL 3094124, at *3 (quoting *Guzman-Vazquez v. Barr*, 959 F.3d 253, 272 (6th Cir. 2020) (citation modified)).

Hernandez-Calel argues that her persecution stemmed from her intersecting social identities as an indigenous Mayan Quiche woman. Specifically, she argues that although she credibly testified to experiencing threats and gender-based violence from an older man and abuse from her employer, the IJ and the BIA "failed to consider how these harms were not random incidents but rather part of a broader pattern of gendered and ethnic subordination rooted in [her] identity as an Indigenous Mayan Quiche woman." CA6, Petitioner Br., at 16. The BIA affirmed the IJ's finding that Hernandez-Calel was "the victim of a private crime" and had "failed to demonstrate the past harm or any future harm would be on account of any protected ground." AR 4. Because the BIA's nexus determination is a finding of fact, we review it under the substantial-evidence standard. *Turcios-Flores v. Garland*, 67 F.4th 347, 357 (6th Cir. 2023).

To obtain asylum relief, Hernandez-Calel needed to show that her membership in her asserted social group was "at least one central reason for her persecution." *See Mazariegos-Rodas*, 122 F.4th at 666 (citation modified). But, as the BIA found, the taxi driver "targeted her for an assault" because "he liked [her]" and her boss hit her because "she could not do her job." AR 4. Thus, Hernandez-Calel was simply the victim of private crimes. Hernandez-Calel also testified that the taxi driver would not have been able to know where she was from based on her appearance or dress, undercutting her argument that she was targeted because of her membership in her particular social group. Hernandez-Calel failed to point to any evidence connecting the harassment and physical abuse she endured to her status as an indigenous Mayan Quiche woman, and without evidence suggesting that the taxi driver or boss targeted her on this account, she cannot show that the record compels the conclusion that she demonstrated the requisite nexus to a protected ground. *See Aguilar-Gonzalez v. Barr*, 779 F. App'x 354, 358 (6th Cir. 2019).

Furthermore, we have observed that "harassment from private individuals do[es] not constitute persecution." *Hegyi v. Gonzales*, 136 F. App'x 777, 778 (6th Cir. 2005) (citing *Fisher v. INS*, 291 F.3d 491, 497 (8th Cir. 2002)). Accordingly, "[i]t is not sufficient that the applicant has been subjected to indiscriminate abuse or has been the victim of a random crime." *Gomez-Chavez v. Barr*, 791 F. App'x 573, 578 (6th Cir. 2019) (citation modified). The applicant must establish that she was "specifically targeted" instead. *Id.* (quotation omitted). Hernandez-Calel failed to make this showing.

Hernandez-Calel also claims that the BIA erred in upholding the IJ's finding that she did not qualify for withholding of removal because she failed to establish a nexus, despite the more lenient standard than that for asylum. However, when "the record shows 'no nexus at all,' it does not compel the conclusion that the IJ erred in ruling that the nexus requirement was not satisfied, even under the more lenient standard" applicable to a withholding-of-removal claim. *Silva del Aguila v. Bondi*, 2025 WL 3634198, at *4 (6th Cir. Dec. 15, 2025) (quoting *Sabastian-Andres*, 96 F.4th at 931). And because Hernandez-Calel did not show that her proposed social group was even one reason for her alleged past or future persecution, the BIA properly rejected her asylum and withholding-of-removal claims.

## III.

For the foregoing reasons, we deny Hernandez-Calel's petition for review.