RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0117P (6th Cir.)
File Name: 04a0117p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

MOHAMED RAMIZ ALI,
        *Petitioner,*

  *v.*                     No. 02-3810

JOHN ASHCROFT, Attorney
General; IMMIGRATION AND
NATURALIZATION SERVICE,
        *Respondents.*

On Petition for Review of the Order of the Board of
Immigration Appeals.
No. A73 378 380.

Submitted: January 29, 2004

Decided and Filed: April 22, 2004

Before: MARTIN and MOORE, Circuit Judges; WEBER ,
Senior District Judge.*

───────────────

*The Honorable Herman J. Weber, Senior United States District
Judge for the Southern District of Ohio, sitting by designation.

───────────────

**COUNSEL**

**ON BRIEF:** Charles S. Owen, OWEN & ASSOCIATES,
Southfield, Michigan for Petitioner. Jennifer A. Parker,
Terri J. Scadron, UNITED STATES DEPARTMENT OF
JUSTICE, OFFICE OF IMMIGRATION LITIGATION,
Washington, D.C., for Respondents.

───────────────

**OPINION**

───────────────

  BOYCE F. MARTIN, JR., Circuit Judge. Mohamed Ramiz
Ali petitions for review of a final order of removal issued by
the Board of Immigration Appeals, which affirmed the
immigration judge's denial of his requests for asylum,
withholding of deportation and voluntary departure. For the
following reasons, Ali's petition is DENIED.

### *FACTUAL AND PROCEDURAL BACKGROUND*

  Ali is a native and citizen of Bangladesh who entered the
United States in 1991 without inspection by the Immigration
and Naturalization Service. The Service commenced removal
proceedings against Ali on March 14, 1997. Ali concedes
that he is deportable, but requests relief from deportation on
several grounds. His primary claim is that he is entitled to
asylum and withholding of deportation because he was, and
fears he will be, persecuted in Bangladesh on account of his
political opinion. He also requests voluntary departure.

  The deportation hearing predominantly featured Ali's own
testimony, which the immigration judge found "incredible,"
"difficult to comprehend" and inconsistent with the
documentary evidence. The crux of Ali's testimony was that
during the period from 1987 to 1990, he was persecuted by
Bangladesh police because of his involvement with the

Jamaat political party. Ali testified that he became a member of that party in 1985 and became the president of its local unit in 1987. After he became president, Ali allegedly began having problems with opposing political parties – specifically, the Awami League, the Jantiya Party and the Bangladesh National Party. Ali testified that he had been arrested and detained on two different occasions as a result of his participation in violent conflicts with members of opposing political parties. According to Ali, these conflicts occurred during public meetings for his party and were the result of members of opposing parties showing up at the meetings and causing trouble. He claimed that he was arrested because an opposing party was in power and he was unfairly blamed. Ali testified that he had sustained various injuries during these conflicts and while in police custody, including being shot in the arm, hit in the leg, cut in the finger and hit in the head.

Ali claims that some time after his release from prison another warrant was issued for his arrest. According to Ali, that warrant was based upon false accusations by an opposing party. He fled Bangladesh and eventually entered Canada using a fake passport. In 1991, Ali entered the United States without inspection, where he later met and married a woman named Alma Sumner.

During Ali's deportation hearing, the Service proffered several documents that cast doubt upon the validity of his marriage to Sumner. One document was a sworn statement from Sumner requesting the withdrawal of the I-130 application that she had filed on Ali's behalf, which stated, in pertinent part: "I think he married me to get a green card." Another document was a letter from the Service to Ali setting forth various discrepancies in Ali's and Sumner's statements concerning their marriage and indicating that "the Service can only conclude that this marriage was entered into by you for the sole purpose of obtaining permanent resident status and evading immigration laws." These documents were admitted over Ali's objection.

At the conclusion of the hearing, the immigration judge rendered an oral decision denying Ali's requests for asylum, withholding of deportation and voluntary departure. On June 19, 2002, the Board of Immigration Appeals summarily affirmed the immigration judge's decision without an opinion. Presently before this Court is Ali's petition for review of the final order of removal issued by the Board. Where, as here, the Board summarily affirms an immigration judge's decision without issuing an opinion, the immigration judge's decision is considered the final agency action to be reviewed by this Court. *Denko v. INS*, 351 F.3d 717, 729 (6th Cir. 2003). We review questions of law involving immigration proceedings de novo. *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). The particular standards of review that apply to Ali's specific claims are set forth within the following analysis.

## ANALYSIS

### A. *Asylum and Withholding of Deportation*

The Board's determination that Ali is ineligible for asylum or withholding of deportation must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (citation omitted); *Klawitter v. INS*, 970 F.2d 149, 151-52 (6th Cir. 1992). In order to reverse the Board's determinations, "the reviewing court must find that the evidence not only supports a contrary conclusion, but indeed compels it." *Klawitter*, 970 F.2d at 152 (citing *Elias-Zacarias*, 502 U.S. at 481).

### 1. *Asylum*

"Disposition of an application for asylum requires a two-step inquiry: first, whether the petitioner is a 'refugee' within the meaning of the [Immigration and Nationality Act], and second, whether the petitioner merits a favorable exercise of discretion by the Attorney General." *Perkovic v. INS*, 33 F.3d

615, 620 (6th Cir. 1994). A "refugee" is a person who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). "[P]ersecution is an extreme concept that does not include every sort of treatment our society regards as offensive." *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir. 1995) (citations and quotation marks omitted). "Persecution" entails "punishment or the infliction of suffering or harm," but "harassment or discrimination without more does not rise to the level of persecution." *Mikhailevitch v. INS*, 146 F.3d 384, 389-90 (6th Cir. 1998) (citations omitted).

The Seventh Circuit's opinion in *Meghani v. INS*, 236 F.3d 843 (7th Cir. 2001), is particularly instructive on the issue of whether Ali's experiences in Bangladesh amount to past persecution on account of his political opinion. In *Meghani*, the petitioner, a member of a political group called the Pakistan People's Party, was assaulted and injured at his office by members of a rival political party, the Mahegir Quami Movement. The petitioner did not notify the police about this incident because he believed they would be ineffective at remedying the problem. He subsequently fled the country and ultimately entered in the United States. The petitioner conceded that he met the requirements for deportability, but claimed that he was entitled to asylum because he was, and feared he would be, persecuted on account of his political opinion. The Seventh Circuit held that "[c]onditions of political upheaval which affect the populace as a whole or in large part are generally insufficient to establish eligibility for asylum," and that what the petitioner experienced was "civil unrest between competing political factions," not persecution. *Id.* at 847 (citation omitted).

Taking the record as a whole, we are convinced that the immigration judge's conclusion that Ali did not suffer persecution, but was instead involved in civil unrest between

competing political factions, was supported by substantial evidence. The immigration judge found no evidence that the police were conspiring with a rival political group, or that they arrested Ali for any reason other than his involvement in causing a public disturbance, and Ali points to no evidence that would undercut that finding. We conclude that substantial evidence supports the immigration judge's determination that Ali is not a refugee and is therefore not entitled to asylum on the basis of past persecution.

Because Ali has failed to prove past persecution, he is "not entitled to the presumption under 8 C.F.R. § 208.13(b)(1)(i) of a well-founded fear of suffering future persecution." *Mikhailevitch*, 146 F.3d at 390. To determine whether Ali has a well-founded fear of future persecution on account of his political opinion, therefore, we apply the standard set forth in *Perkovic*:

> The Supreme Court has held that an applicant for asylum has a well-founded fear of persecution if he can show that "persecution is a reasonable possibility" should he be returned to his country of origin. A well-founded fear of persecution has both a subjective and an objective component: an alien must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an "objective situation" under which his fear can be deemed reasonable. A well-founded fear of persecution does not require the applicant to show that he probably will be persecuted if he is deported; "[o]ne can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place."

33 F.3d at 620-21 (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987)). "[A]n alien is not required to produce evidence of persecution; the alien's own testimony can be sufficient to support an application for asylum, where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis for his fear." *Id.*

at 621 (citation and internal quotation marks omitted). Because a well-founded fear of persecution can be based upon what has happened to others who are similarly situated, it is "necessary, in considering an applicant's asylum petition, to weigh evidence of general conditions in the country of origin and the foreign government's history of treatment of others engaged in similar activities." *Id.* (citation omitted).

Ali testified at the deportation hearing that he feared that he would suffer persecution on account of his political opinion if he were forced to return to Bangladesh. While Ali may, in fact, subjectively fear future persecution, we find no sufficient basis in the record to undercut the immigration judge's conclusion that his fear is not objectively reasonable. *Perkovic,* 33 F.3d at 620-21. Ali's fear of future persecution is primarily based upon events that have occurred in the past that the immigration judge concluded, based upon substantial evidence, do not rise to the level of persecution. There is simply no evidence in the record to substantiate Ali's testimony that he fears future persecution.[1] In fact, as the immigration judge emphasized, the State Department's 1998 asylum profile for Bangladesh reveals no information indicating that members of the Jamaat political party have suffered persecution on account of their political opinion, despite the party's ability "to mount violent demonstrations in support of fundamentalist Muslim positions." Bangladesh: Profile of Asylum Claims and Country Conditions, United States Department of State, February 1998, at 10. Finally, in the face of the immigration judge's reasonable doubts about Ali's credibility, we are unable to say that Ali's testimony, standing alone, was sufficiently "believable, consistent, and sufficiently detailed to provide a plausible and coherent

---

[1]Ali produced a document during the deportation hearing that he claimed was a copy of an outstanding warrant for his arrest issued by authorities in Bangladesh, but the immigration judge excluded this document because it could not be authenticated. Ali has not specifically challenged the immigration judge's exclusion of this document, and the document is not part of the record evidence.

account of the basis for his fear." *Id.* at 621. We find that substantial evidence supports the immigration judge's conclusion that Ali did not possess a well-founded fear of persecution in Bangladesh on account of his political opinion.

### 2. *Withholding of Deportation*

To qualify for withholding of deportation, an applicant must show a "clear probability of persecution," which is a stricter standard than the "well-founded fear" standard that applies with respect to applications for asylum. *INS v. Stevic*, 467 U.S. 407, 430 (1984); *see also* 8 C.F.R. § 208.16(b)(1). Because Ali has failed to demonstrate a well-founded fear of persecution in Bangladesh on account of his political opinion, his request for withholding of deportation must likewise fail. *Daneshvar v. Ashcroft*, 355 F.3d 615, 625 (6th Cir. 2004) ("Because substantial evidence supports the conclusion that Petitioner is ineligible for asylum, it therefore follows that he cannot satisfy the more stringent standard for withholding of deportation.").

### B. *Voluntary Departure*

The Immigration and Nationality Act grants the Attorney General the discretionary power to allow a deportable alien to depart voluntarily in lieu of deportation if the alien establishes that he "has been a person of good moral character, for at least five years preceding his application." 8 U.S.C. § 1254(e). The immigration judge determined that Ali had failed to demonstrate the requisite "good moral character." That determination was based at least in part upon the Service's evidence regarding the validity of his marriage to Sumner. Ali concedes that entering into a sham marriage for purposes of obtaining immigration benefits precludes an alien from demonstrating the requisite good moral character. Nevertheless, he argues that the immigration judge erred in finding that he was not entitled to voluntary departure. He also contends that the admission of the evidence concerning the validity of his marriage denied him a fair hearing.

The transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 apply in this case because Ali's deportation proceedings commenced before April 1, 1997, but the final administrative order of deportation was issued on or after October 30, 1996. IIRIRA §§ 309(a), (c)(1), (c)(4). Under the transitional rules, we lack jurisdiction to review "any discretionary decision under section . . . 244 of the [Immigration and Nationality Act]." *Id.* at § 309(c)(4)(E). A decision denying voluntary departure is such a discretionary decision. *Id.; Lulaj v. INS*, 71 Fed. Appx. 524, 526 (6th Cir. 2003) (unpublished opinion). Therefore, we lack jurisdiction to review the propriety of the denial of Ali's request for voluntary departure. *Lulaj*, 71 Fed. Appx. at 526; *Tamas-Mercea v. Reno*, 222 F.3d 417, 427 (7th Cir. 2000).

To the extent that Ali asserts a due process violation based upon the immigration judge's admission of the evidence concerning the validity of his marriage, such a claim must also fail. "Fifth Amendment guarantees of due process extend to aliens in deportation proceedings, entitling them to a full and fair hearing." *Huicochea-Gomez*, 237 F.3d at 699 (citations omitted). However, "[t]he failure to be granted discretionary relief [such as voluntary departure] does not amount to a deprivation of a liberty interest." *Id.* at 700 (citation omitted). Because Ali cannot demonstrate that he has suffered a deprivation of a liberty interest, he cannot prove a due process violation.

### *CONCLUSION*

For these reasons, Ali's petition for review of the order of the Board of Immigration Appeals is DENIED.