**AMERICAN HOME MORTGAGE ACCEPTANCE, INC., a Maryland Corporation, Plaintiff,**

v.

**The APPRAISAL PLACE, INC., a Michigan Corporation, State Appraisals, Inc., a Michigan Corporation, Pamela S. Siira, and James Boudreau, Defendants.**

No. 06–10498.

United States District Court, E.D. Michigan, Southern Division.

Oct. 6, 2006.

Scott L. Mandel, Foster, Swift, Lansing, MI, Harold B. Hilborn, Varga, Berger, Chicago, IL, for Plaintiff.

Richard A. Kudla, Kudla & McLeod, Southfield, MI, Alvin A. Rutledge, Dora A. Brantley, Rutledge, Manion, Detroit, MI, Steven A. Matta, Garan Lucow, Troy, MI, for Defendants.

### ORDER GRANTING PLAINTIFF'S MOTION TO STRIKE NOTICE OF NON–PARTY FAULT (DKT.# 17)

PEPE, United States Magistrate Judge.

On June 21, 2006, Defendants James Boudreau and State Appraisals, Inc. filed their Notice of Non–Party Fault pursuant to MCLA 600.2957 and MCLA 600.2959 in which they identify eight individuals to whom they contend fault should be allocated (Dkt.# 13). On July 20, 2006, Plaintiff, American Home Mortgage Acceptance, Inc. ("American Home") subsequently filed its Motion to Strike Notice of Non–Party Fault arguing that Defendants cannot allocate blame to any other party for American Home's injury because they alone are responsible for the harm alleged in this case (Dkt.# 17). Plaintiff's motion was referred to the undersigned for hearing and determination pursuant to 28 U.S.C. 636(b)(1)(A). On September 14, 2006, a hearing was held and oral arguments were heard. Following a review of the parties' briefs and oral arguments, IT IS ORDERED that Plaintiff's motion is GRANTED and Defendants' Notice of Non–Party Fault is stricken.

## I. FACTUAL BACKGROUND

On February 6, 2006, American Home filed a three-count complaint against State Appraisals, Inc., James Boudreau, Pamela Sirra and The Appraisal Place, Inc. American Home alleges that Defendants, who are real estate appraisers, negligently and fraudulently issued appraisals of residential real estate located at 32450 Rock Ridge Lane, Farmington Hills, Michigan (the "Property"). Defendants appraised the Property at more than $2.8 million. Their reports were submitted to American Home. American Home then loaned purchaser Marcus Lewis ("Lewis"), a nonparty to whom Defendants seek to attribute fault, approximately $1.8 million, which was secured by the Property (Dkt.# 17, p. 4). Mr. Lewis failed to make payments under the mortgage contract. American Home commenced foreclosure. During the foreclosure of its loan to Lewis, American Home learned that the value of the Property at the time it made the loan was substantially less than $2.8 million and fell below the amount of the loan. American Home's loan is under-securitized, and as a result, it seeks to recover the shortfall between the unpaid loan and the proceeds from the anticipated sale of the Property that secured its $1.8 million loan to Lewis.

Defendants argue that the harm Plaintiff suffered in this case relates to the loan issued to Lewis and the process and investigation that went into issuing that loan, and not the alleged inaccurate appraisal of the Property and the Plaintiff's resulting failure to secure sufficient loan collateral. In support of their position that this case concerns the issuance of a loan, Defendants indicate that Plaintiff alleges in ¶ 25 of its complaint: "AMERICAN HOME would not have made the LOAN to Lewis had STATE APPRAISALS and BOUDREAU accurately appraised the fair market value of the PROPERTY." As

such, Defendants claim they are only responsible for one portion of Plaintiff's loan application investigation and underwriting process that led to making the loan. Defendants argue that eight other individuals may have acted negligently and/or fraudulently in submitting documents to Plaintiff in relationship to the subject loan and these non-parties caused the damages complained of by Plaintiff. In their notice of non-party fault, Defendants allege (Dkt.# 13):

— Upon information, Jeff Shelley was the underwriter who coordinated the mortgage transaction between Plaintiff and Marcus Lewis relating to the property commonly known as 32450 Rock Ridge Lane, Farmington Hills, Michigan 48334. In coordinating the mortgage transaction, Mr. Shelley may have negligently failed to perform a proper and full investigation regarding the potential borrower, Marcus Lewis.

— Upon information, Robert Hance is/was employed by or an agent of Fifth Third Bank. Robert Hance introduced Defendant, James Boudreau to Tyrone Hogan, with the knowledge that Tyrone Hogan was involved in a scheme to commit fraud as it relates to the property commonly known as 32450 Rock Ridge Lane, Farmington Hills, Michigan 48334.

— Upon information, Tyrone Hogan is/was employed by or an agent of Rockridge Holdings. Tyrone Hogan initially ordered from Defendants, James Boudreau and State Appraisals, Inc., an appraisal of the property commonly known as 32450 Rock Ridge Lane, Farmington Hills, Michigan 48334. In ordering said appraisal, Tyrone Hogan may have had the knowledge that the potential buyer, Marcus Lewis, was involved in a scheme to commit fraud as it relates to said property.

— Upon information, Marcus Lewis is/was the mortgagee for the property commonly known as 32450 Rock Ridge Lane, Farmington Hills, Michigan 48334. Marcus Lewis may have applied for the mortgage on said property with the intent to commit fraud.

— Upon information, Kevin A. Carter is/was employed by or an agent of Carter Advisors, Inc. In his position at Carter Advisors, Inc., Kevin Carter submitted a letter to the loan committee of Plaintiff dated October 25, 2004 verifying the employment of the potential borrower, Marcus Lewis. Kevin Carter may have submitted said letter with the knowledge that Marcus Lewis was involved in a scheme to commit fraud as it relates to the mortgage on the property commonly known as 32450 Rock Ridge Lane, Farmington Hills, Michigan 48334.

— Upon information, Darryl Wesley Clements is/was employed by or an agent of Senpaul Group. In his capacity at Senpaul Group, Darryl Clements submitted a letter to Plaintiff dated October 27, 2004 verifying the rental history of the potential borrower, Marcus Lewis. Mr. Clements may have submitted said letter with the knowledge that Marcus Lewis was involved in a scheme to commit fraud as it relates to the mortgage on the property commonly known as 32450 Rock Ridge Lane, Farmington Hills, Michigan 48334.

— Upon information, John/Jane Doe(s) are/were employed by or agents of American Home Mortgage and/or Fifth Third Bank. In his/her/their capacity at American Home Mortgage and/or Fifth Third Bank, these persons may have negligently failed to perform a full and proper investigation regarding the potential buyer, Marcus Lewis and/or the property commonly known as 32450 Rock Ridge Lane, Farmington Hills, MI 48334. Additionally, these persons may have been involved in a scheme to com-

mit fraud as it relates to the property commonly known as 32450 Rock Ridge Lane, Farmington Hills, MI 48334.

Therefore, Defendants argue the appraisal performed was not, and could not have been the only reason Plaintiff entered into the subject mortgage loan transaction. Pursuant to M.C.L. 600.2957 and M.C.L. 600.2959, Defendants claim the above listed non-parties may be wholly or partially at fault for the incidents, occurrences and damages claimed in Plaintiff's Complaint, and that the relative proportion of fault of these non-parties should be allowed to be raised by Defendants at the time of trial.

At the hearing on Plaintiff's Motion to Strike Notice of Non–Party Fault, Plaintiff indicated on the record that the harm for which it is seeking damages related to the alleged negligent or fraudulent appraising of the Property. In support of its position that this case concerns the appraisal, Plaintiff referenced ¶¶ 21 and 25 of its complaint, which are identical claims made against each Defendant. In ¶ 21 of Plaintiff's Complaint, it states: "AMERICAN HOME relied upon the INITIAL APPRAISAL in connection with its decision to make the LOAN. Specifically, AMERICAN HOME relied upon the INITIAL APPRAISAL's $2,850,000 estimated market value of the PROPERTY as constituting sufficient security in the event of a default by Lewis on the LOAN."[1] Further, the Plaintiff claimed both in its briefs and at the hearing that Defendants are the only persons who provided American Home with information about the value of the Property, and that neither American Home nor any non-parties were involved in the valuation of the Property.

1. ¶ 25 of Plaintiff's Complaint makes an identical claim against the other Defendants in-

## II. ANALYSIS

### A. *Standards Of Review*

■ This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1), as the parties are of diverse citizenship and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. A federal court in a diversity action applies the substantive law of the state in which it sits in accordance with the controlling decisions of the state courts. *Erie R Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Hayes v. Equitable Energy Res. Co.,* 266 F.3d 560, 566 (6th Cir. 2001); *Prestige Cas. Co. v. Mich. Mut. Ins. Co.,* 99 F.3d 1340, 1348 (6th Cir.1996). Yet, under the *Erie* doctrine, federal courts sitting in diversity apply federal procedural law. 28 U.S.C.A. § 1652.

Under 28 U.S.C. § 636(b) and Fed. R.Civ.P. 72, a district court normally applies a "clearly erroneous or contrary to law" standard of review for nondispositive preliminary measures referred to a magistrate judge for determination. *See* 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a). Yet, questions of law are reviewed de novo. *Ali v. Ashcroft,* 366 F.3d 407, 409 (6th Cir.2004). The following analysis is a mixed opinion of law and fact and subject to de novo review.

### B. *Factual Analysis*

■ Michigan tort reform legislation has abolished joint and several liability in favor of several liability. As a result, M.C.L. § 600.2957 now provides in pertinent part, as follows:

> In an action based on tort or another legal theory seeking damages for personal injury, property damage, or wrongful death, the liability of each per-

volved in this case: Appraisal Place and Siira.

son shall be allocated under this section by the trier of fact and, subject to section 6304, in direct proportion to the person's percentage of fault. In assessing percentages of fault under this subsection, the trier of fact shall consider the fault of each person, regardless of whether the person is, or could have been named as a party to the action.

Alleging several liability under M.C.L. § 600.2957, Defendants filed a notice of nonparty fault pursuant to M.C.R. 2.112(K)(3)(a), claiming that eight other individuals may be wholly or partially liable for Plaintiff's damages and that each should be allocated a percentage of fault under Michigan's statutory provisions for comparative negligence. MCR 2.112(K) states:

(1) Applicability. This rule applies to actions for personal injury, property damage, and wrongful death to which M.C.L. 600.2957 and M.C.L. 600.6304, as amended by 1995 PA 249, apply.

\* \* \* \* \* \*

(3) Notice.

(a) A party against whom a claim is asserted may give notice of a claim that a nonparty is wholly or partially at fault. A notice filed by one party identifying a particular nonparty serves as notice by all parties as to that nonparty.

Yet, under Michigan law, as pronounced by the court in *Holton v. A+ Insurance Associates, Inc.*, 255 Mich.App. 318, 661 N.W.2d 248 (Mich.Ct.App.2003), non-party fault principles apply only to the cause of action alleged in the case (in *Holton*, an insurance damage claim for inadequate collateral) and not to the underlying cause(s) that might have brought about the loss requiring the insurance payout. In *Hol-*

*ton*, plaintiff-homeowners remodeled and re-roofed their home. They contacted the defendant insurance agent to increase their insurance coverage due to the increased value of their home. Water leaks occurred due to ice dams that formed because of defects in the roof caused by their contractor. On January 30, 2000, Mr. Holton placed an electric heater on his roof in an attempt to melt the ice dams. Later the roof and second story of their house caught fire. The loss exceeded the insurance available.

The Holtons filed an action against their insurance agent and his agency to recover the shortfall in insurance proceeds.[2] They asserted various causes of action, all of which alleged that the insurance agent and agency negligently failed to procure adequate homeowner's insurance. The defendants filed a notice of non-party fault, claiming that plaintiffs and the construction company plaintiffs hired to work on their house were wholly or partially responsible for the damages that the plaintiffs sought to recover because they had caused the fire. The plaintiffs moved to strike the notice of non-party fault and argued that it was inapplicable to their claims because their action sought recovery for the defendants' negligent failure to procure sufficient insurance. The trial court agreed with the plaintiffs, concluding that defendants could not request that liability for the lack of adequate insurance coverage be apportioned to anyone else "because defendants were the only parties potentially responsible for plaintiffs' lack of insurance coverage." *Id.* at 321, 661 N.W.2d 248.

The Michigan Court of Appeals affirmed. It noted that defense counsel

---

**2.** The *Holton* Court refers to A+ Insurance Associates, Inc. as "defendant insurer." *Holton*, 255 Mich.App. at 318, 661 N.W.2d 248. Yet, further research indicates that A+ Insurance Associates, Inc. is in actuality an insurance agency that represent various insurance companies. *See*, A+ Insurance Associates, Inc., *available at* http://aplusagents.com (last visited October 2, 2006).

characterized the Holtons' action as one arising out of a fire, which defendants contended was a property claim covered by the non-party fault statute. *Id.* at 325, 661 N.W.2d 248. In the Michigan Court of Appeals's view, the Holtons' action was more properly characterized as arising out of an insurance claim, or more specifically, an insurance property damage claim. It concluded that "allocation of fault for the underlying conduct, i.e., the fire, does not apply to plaintiffs' action to recover a shortfall in insurance proceeds and, therefore, defendants' notice of nonparty fault under M.C.R. 2.112 was improper." *Id.* at 321, 661 N.W.2d 248. Moreover, the defendants' failure to identify any wrongful conduct by third parties which they intended to prove caused the lack of insurance, as opposed to the fire itself, was fatal to their notice of nonparty fault. *Id* at 326, 661 N.W.2d 248. The *Holton* Court thus drew a sharp distinction between "underlying claims" for loss and claims arising out of conduct which, but for the negligence of the defendants, would have protected the plaintiff against the financial consequences of the loss.

The *Holton* court did a traditional proximate cause analysis. It noted that "in this case" the cause of the fire (whether Mr. Holton or his contractor) is no more relevant to the question of who caused the inadequate insurance coverage "than it would be if it related to a purely accidental event, such as a lightening strike." *Id.*

Defendants' Notice of Non–Party Fault in this case is similar in kind to the defective notice in *Holton.* Plaintiff American Home's claim in this case is that its damages occurred because Defendants' appraisals led it to believe that there would be adequate security for the loan in the event of a default, not because of Lewis' underlying default or any fraud he may have committed in connection with his loan application. Plaintiff's Complaint and damages sought support this contention.[3] This is similar to the Holtons suing because their interaction with the insurance agent in regard to the remodeling of their home led them to believe that there would be adequate insurance coverage on their home in the event of a fire. Just as the "underlying claim" in *Holton* was fire damage to the plaintiffs' home, the "underlying claim" here is Lewis' default on his loan from American Home. As the plaintiffs in *Holton* sought to procure insurance against fire loss, American Home hedged against the financial risk of Mr. Lewis' default by securing its loan with collateral (the Property appraised by the Defendants) of a sufficiently large value to protect the lender from a default, i.e. insurance against the risk of default. As the plaintiffs in *Holton* claimed that they received inadequate security from their insurance agents, so too does Plaintiff in this action claim that it received inaccurate information from its appraisers thereby getting it to accept insufficient collateral to cover its losses.[4] Again, following the *Hol-*

---

**3.** Plaintiff American Home is not attempting to hold the Defendant appraisers responsible for Mr. Lewis' obligations under the loan, but rather, they claim harm from the alleged inaccurate valuation of collateral that was supposed to secure that loan, i.e. the appraisal of the Property. Plaintiff's Complaint makes clear in ¶¶ 21 and 25 that this action directly concerns the sufficiency of its collateral for the loan. Defendants indicate that ¶ 25 does not contain this language, but this fact does not alter the meaning of Plaintiff's Complaint.

Notwithstanding ¶ 25, Plaintiff still has a cause of action against Defendants as it relates to an impairment of collateral for the loan.

**4.** It is important to note that Holton was not suing in contract against his insurance carrier, but in tort against his agent and the agency for a shortfall in insurance proceeds because of the agents failure to get the correct policy limits with the insurance carrier. Thus, the tort suit related to a third-party

*ton* court reasoning, none of the non-parties are being accused of any significant fault contributing to the inadequate appraisal of the Property (the claim in suit), but rather with actions contributing to Plaintiff making a high risk loan to Mr. Lewis (the underlying claim).

As in *Holton,* it could be said that the reasons for making the loan to Mr Lewis, or the reasons for his failure to meet his payment obligations under the loan, are no more relevant to the reasons the appraiser excessively valued the Property by approximately one million dollars than it would be if the loan were made to a well paid and trustworthy individual whose default was caused by his job loss in an economic downturn.[5]

 Moreover, allowing Defendants' Notice of Non–Party Fault to stand would conflict with the principles of a comparative negligence system. Under the comparative negligence doctrine, negligence is measured in terms of percentage, and any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage, or death recovery is sought. Hence, comparative negligence serves to allocate damages between two or more parties at fault in causing harm. The amount of fault allocated to each responsible party should total 100%. Yet, here the damages for inducing an unreliable loan and the damages for its non-payment (which Defendants seem to accuse the non-parties of) would typically be expectation damages—a full return of principal plus any lost interest on the term of the loan and possibly other incidental damages. But the damages Plaintiff seek against Defendants (as in *Holton* ) is *not* for the underlying loss, but for the shortfall or difference money between that loss and the proceeds from the anticipated sale of the Property (similar to the proceeds from the actual level of insurance coverage the Holtons had). If this Court follows the Defendants' argument and allows one cause of action to effectively encompass two separate torts—both a claim against the appraiser for difference money and for the underlying loan default—the total of assigned fault would exceed 100%. Exactly how could a court instruct a jury to make a proper allocation totaling 100% when the legal measures of damages of the defendants and the non-parties are different?

As stated in footnote 5, "defendants are entitled under the statutory provisions for comparative fault, to seek an apportionment of fault for the alleged liability concerning the inaccurate appraisal of the Property, but not for any alleged nonparty wrongdoing that contributed to Mr. Lewis obtaining the loan or that contributed to his default thereon."

 Therefore, the only remaining question is whether Defendants have proffered any evidence showing that non-parties are responsible for the mistaken appraisal of the Property. A defendant that attempts to mitigate his liability through a comparative fault defense has the "burden

---

contract of plaintiff with the insurance carrier. Similarly, in this case, American Home's suit is related to its third party contract with Lewis, but is against the appraisers that allegedly failed to provide them with correct information on which to establish appropriate collateral (or insurance) for their loan.

**5.** As noted below, as in *Holton,* "defendants are entitled under the statutory provisions for comparative fault, to seek an apportionment of fault for the alleged liability concerning" the inaccurate appraisal of the Property, but not for any alleged non-party wrongdoing that contributed to Mr. Lewis obtaining the loan or that contributed to his default thereon. *See Holton,* Section III, 255 Mich.App. at 326, 661 N.W.2d 248.

of alleging and proving that another person's conduct was a proximate cause of the plaintiff's damages." *Lamp v. Reynolds,* 249 Mich.App. 591, 599, 645 N.W.2d 311 (Mich.Ct.App.2002). Legal or proximate cause is "that which operates to produce particular consequences without the intervention of any independent, unforeseen cause, without which the injuries would not have occurred." *Id.*

From a thorough review of the Defendants' Notice of Non–Party Fault, it appears that every claim they make against a non-party is related to the issuance of a loan and not to an appraisal of the Property. For instance, Defendants allege that "Marcus Lewis may have applied for the mortgage on said Property with the intent to commit fraud" and that Mr. Shelley in coordinating the mortgage transaction, "may have negligently failed to perform a proper and full investigation regarding the potential borrower" (Dkt.# 13). Moreover, Defendants do not demonstrate in their notice or briefs that American Home's or any third-party's alleged negligence in making the loan to Lewis is a factor in how the Property was valued. While Defendants may have an independent cause of action against Plaintiff or some third party, they have failed to show how the alleged wrongful conduct of any non-party caused a negligent or fraudulent appraisal of the Property.[6]

---

6. At the hearing on this matter, Defendants assert that the value placed on the Property by the purchaser was a significant factor in making the appraisal. Yet, it is precisely to protect against an over-optimistic, an over-enthusiastic, a naive, or even a fraudulent purchaser's contract price on a property that lenders need to rely on independent appraisals based primarily on prior sale of comparable properties.

While Defendants, if they choose, can introduce and stress the price Lewis paid if they think that their reliance on this will negate their asserted negligence, that reliance by the appraiser (if actual and not contrived) does not make a purchaser a third party at fault as might be the case if purchaser or other individual covered up flaws in the property or interfered with the appraiser's inspection of it. While this motion regarding non-party fault·comes at the pleading stage, before this Court should allow a purchaser to be named as a non-party at fault (which would include any over-optimistic, over-enthusiastic, naive buyer enamored with some element of the property), Defendants should be required to provide some evidence—possibly experts in the standards of competence in appraising real estate—to establish that the contract price on the appraised property is a *significant* factor in arriving at an appraisal value, and not just a hypothesis of value to be tested, verified or refuted by the appraisal process. It may well be that an appraiser placing disproportionate (or possibly even any significant) weight on such evidence in an appraisal as relevant to an accurate appraisal value would be evidence of the appraiser's negligence and not evidence of the appraiser's competence and a type of "fault" caused by the buyer's folly. As noted in *Holton,* the statute on notice of non-parties at fault is not intended to create new liability. *Holton,* 255 Mich.App. at 321, 661 N.W.2d 248. Obviously an innocent, naive buyer who contracted to pay an extremely excessive amount for the property would have no tort liability under Michigan law. Such a good faith buyer could never be named as a third-party at fault in an action such as this. It is doubtful an expert in real estate appraisals would conclude that the answer to the question of whether an appraiser should ordinarily give significant weight to a buyer's purchase price on the property being appraised depends on whether that buyer overpaid because of innocent over enthusiasm for the property and folly or because of a fraudulent motive. Thus, if the price agreed to by the buyer is considered a significant relevant factor in making an appraisal (which is the problematic foundation question), and the innocent, naive purchaser who negligently agreed to pay too much cannot be named as a non-party defendant at fault, it is unclear why a fraudulent purchaser should be in a different position if one assumes that the purchase price at issue is the same for each of the hypothetical purchasers.

Again, if Mr. Lewis took some other action to interfere with the appraisal, such as covering up property defects, those actions beyond the purchase price agreed to would subject him to being named under the statute.

Therefore, as a matter of law, Defendants' Notice of Non–Party Fault should be stricken.

### III. ORDER

For the reasons stated above, IT IS ORDERED that Plaintiff's Motion to Strike Notice of Non–Party Fault is GRANTED. As this Order directly involves a question of law, it is recommended the district court review this opinion de novo. The parties to this action may object to and seek review of this Order, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Any objections are required to specify the part of the Order to which the party objects and state the basis of the objection. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge. Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

So ORDERED.