**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 08a0750n.06
Filed: December 9, 2008
No. 06-3492

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

AMANI MAHMOUD ALHADDAD,

    *Petitioner*

                                  On Petition for Review of a Decision of the
                                  Board of Immigration Appeals

v.

MICHAEL MUKASEY,

    *Respondent*

_____/

    **BEFORE: KENNEDY, BATCHELDER, Circuit Judges, and THAPAR [*], District Judge.**

    **KENNEDY, Circuit Judge.** Petitioner Amani Mahmoud Alhaddad seeks review of a March 9, 2006, decision of the Board of Immigration Appeals (Board), denying her application for asylum, withholding of removal, and Convention Against Torture (CAT) relief. A native and citizen of Israel, she resided in Gaza before coming to the United States. Based on inconsistencies between her asylum application and testimony, the Board found her to lack credibility. In the alternative, the Board found that she had not suffered past persecution and had no well-founded fear of future

---

    [*]The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

persecution. Because we believe the Board's findings were supported by substantial evidence, we deny the petition for review.

## BACKGROUND

Petitioner Alhaddad, a national and citizen of Israel, resided in Gaza before coming to the United States. J.A. at 10-11. Petitioner testified that while in Gaza, she volunteered at the Association of Women Committees for Social Work (AWCSW) for a little over a year. As a volunteer, she traveled door to door to recruit members for the organization. She testified that the organization focused on promoting education of women and aimed at informing women of their "rights and duties with their husbands and society, the right to vote, the rights to work, and the right to participate in building the society."

Alhaddad based her testimony in support of her asylum application on two 1999 incidents which resulted from her participation in AWCSW. First, she testified that in July or August of 1999, she was struck on the arm and back by Palestinian police officers who were attempting to dissipate a demonstration in which she was participating. She sustained an injury to her arm for which she was treated at a private clinic. Second, she claims that in 1999, two Palestinian police officers came to her house and demanded that she meet with their supervisor. She reported to the station less than a week later and met with the police supervisor for an hour. During this meeting, she realized that the police knew personal information about her including her name, the subjects that she was studying, and how far she had progressed in her education. The police warned her that she "should not participate in any kind of such demonstration" and threatened her with imprisonment if she did participate. As a threat, the police supervisor offered to show her other people that had been arrested

2

before her. Following this meeting, she ceased her volunteer activities with AWCSW and decided that she needed to "get out of the country."

Alhaddad remained in Gaza to finish her schooling, however, and met her husband there in 2000. They married a few days after meeting. Her husband helped her leave Gaza by applying to a university in the United States for her and obtaining a student non-immigrant visa on her behalf. Once in the United States, Alhaddad enrolled in courses at Tennessee State University. She became pregnant soon after entering the United States, however, and experienced severe complications related to her pregnancy. As a result, she was unable to remain a full-time student and was informed by university officials that her student visa had been cancelled.

Alhaddad applied for asylum on September 14, 2002, with the assistance of her husband, an asylee whose grasp of the English language was better than her own. Her application focused on past persecution she claimed to have experienced at the hands of the Israeli army and made no mention of her involvement in AWCSW or her fear of persecution by the Palestinian Authority.

The main issue in Alhaddad's removal hearing was the inconsistency between her asylum application and her testimony. In her written application, she focused on her fear of being persecuted by the Israeli army. She described an incident in which she was "shot at" with a rubber bullet during a riot. Inconsistencies existed even as to the facts surrounding this incident. She testified that she personally had been hit by a bullet, while her application explicitly states, "I did not get hit." When asked why she failed to mention any of the incidents involving the Palestinians in her application, she testified, "I was afraid it would go to the Palestinians…I was afraid for my family over there, too." She offered a similar explanation when asked why she had omitted any reference to the

AWCSW and had answered "no" to the application's query, "Have you…ever belonged to or been associated with any organizations or groups in your home country, such as, but not limited to, a political party, student group, labor union, religious organization, military or paramilitary group, civil patrol, guerilla organization, ethnic group, human rights group, or the press or media?"

Based on this apparent inconsistency as well her lack of knowledge of certain details about the AWCSW, the Immigration Judge found that Alhaddad was not credible. Additionally, the Immigration Judge found that even were she credible, she had not established past persecution based on her testimony regarding the demonstration injury and the police station incident. He found relevant that she had remained in Gaza for two years following the police station incident and that during that time, she had suffered no persecution. Additionally, he found that her application and testimony lacked any evidence that members of the AWCSW had been targeted by the Palestinian police. Based on this analysis, the Immigration Judge found that Alhaddad was ineligible for asylum, withholding of removal, and Convention Against Torture relief.

On May 9, 2006, the Board dismissed Alhaddad's appeal, agreeing with the Immigration Judge's credibility determination and alternative finding of ineligibility based on a failure to establish past persecution or a well-founded fear of future persecution. Alhaddad timely filed a petition for review.

**ANALYSIS**

**I. Standard of Review**

We review administrative findings of fact under a deferential substantial evidence standard, such that the findings "are conclusive unless any reasonable adjudicator would be compelled to

4

conclude to the contrary." INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B). A court may reverse a finding of fact only if "the evidence not only supports th [e] conclusion [urged by the petitioner], but compels it...." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n. 1 (1992); *Yu v. Ashcroft*, 364 F.3d 700, 702-03 (6th Cir.2004).

The BIA's discretionary determination of whether to grant asylum is "conclusive unless manifestly contrary to law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D). "An abuse of discretion occurs when the BIA exercises its discretion in a way that is arbitrary, irrational, or contrary to law." *Gilaj v. Gonzales*, 408 F.3d 275, 288 (6th Cir. 2005)(citation omitted). When reviewing the denial of withholding of removal, we uphold the Board's determination "unless it is 'manifestly contrary to the law.'" *Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir.2003) (quoting *Ali v. Reno*, 237 F.3d 591, 596 (6th Cir.2001)). We apply the same standard of review to claims for relief under the CAT. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir.2006).

## II. Asylum and Withholding of Removal

A. Applicable Law

In order to qualify for asylum, an applicant must survive a "two-step inquiry: first, whether the petitioner is a 'refugee'…and second, whether the petitioner merits a favorable exercise of discretion by the Immigration Judge." *Mapouya v. Gonzales*, 487 F.3d 396, 406 (6th Cir.2007) (citation omitted). "The burden of proof is on the applicant to establish that the applicant is a refugee." 8 U.S.C. § 1158(b)(1)(B)(i). Pursuant to 8 U.S.C. § 1101(a)(42)(A), a "refugee" is an individual "who is unable or unwilling to return to" his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular

5

social group, or political opinion." To establish his or her status as a refugee, a petitioner must establish either past persecution or a well-founded fear of future persecution. 8 C.F.R. § 208.13(b). A well-founded fear of persecution does not require the petitioner to establish that she probably will be persecuted if she is forced to return to her home country; "[o]ne can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987).

Withholding of removal, governed by 8 U.S.C. § 1253(h)(1), is mandatory if a petitioner's "life or freedom would be threatened [in the country of deportation] on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* A petitioner seeking withholding of removal "must show a 'clear probability of persecution,' which is a stricter standard than the 'well-founded fear' standard that applies with respect to applications for asylum.'" *Ali v. Ashcroft*, 366 F.3d 407, 411 (6th Cir.2004) (quoting *INS v. Stevic*, 467 U.S. 407, 430 (1984)). When faced with a claim for withholding of removal, "[t]he courts consider the same factors to determine eligibility for both asylum and withholding, but in the case of withholding, a higher probability of persecution is required." *Castellano-Chacon*, 341 F.3d at 544-4.

B.  The Board's determination that Alhaddad was not credible was supported by substantial evidence

To find an applicant not credible, an Immigration Judge must explicitly state specific reasons for the determination. *Daneshvar v. Ashcroft*, 335 F.3d 615, 623 n. 7 (6th Cir. 2004)(citation omitted). An adverse credibility finding must be based on "issues that go to the heart of the

applicant's claim," *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). Minor inconsistencies will not be sufficient to support an adverse credibility finding. *Daneshvar*, 355 F.3d at 623 n. 7.[1]

The major discrepancies between Alhaddad's application and testimony were sufficient to support an adverse credibility finding. In her application, Alhaddad alleged only persecution by the Israeli army, and made no mention of persecution she had experienced at the hands of the Palestinian Authority. Far from constituting a minor discrepancy, this omission later became the entire basis for her claim. "[O]missions may form the basis of an adverse credibility determination, provided they are substantially related to the asylum claim." *Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir.2005). As the Government's brief accurately points out, we have found lesser admissions sufficient to support an adverse credibility determination. *See* Final Brief for Respondent at 16, Amani Mahmoud Alhaddad v. Michael B. Mukasey, No. 06-4392 (6th Cir. Sept. 18, 2008) (citing *Ndrecaj v. Mukasey*, 522 F.3d 667, 675 (6th Cir. 2008); *Ceraj v. Mukasey*, 411 F.3d 583 (6th Cir. 2007); *Shkabari v. Gonzales*, 427 F.3d 324, 329-330 (6th Cir. 2005)).

Substantial evidence supported the Board's finding that Alhaddad's explanation for the omissions in her application was unpersuasive. Her claim that she feared the Palestinian Authority would find out about her activities with ACSWS is weak in light of the fact that she had already been

---

[1]In *Amir v. Gonzales*, 467 F.3d 921, 925 n.4 (6th Cir. 2006), this court noted that the statute governing credibility determinations has been modified:

> The REAL ID Act of 2005, Pub. L. 109-13, 119 Stat. 231 (codified in scattered sections of 8 U.S.C.), changed the standard of governing credibility determinations, stating that those determinations may be made "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim." 8 U.S.C. § 1158(b)(1)(B)(iii). This provision, however, only applies to aliens who applied for asylum, withholding of removal, or other relief on or after May 11, 2005, the effective date of this division of the Act. Pub.L. 109-13, div.B, § 101(h)(2), 119 Stat. 231 at 305.

> As Alhaddad applied for asylum on September 14, 2002, this provision of the REAL ID Act does not apply to her claims.

called in by the Palestinian police supervisor to discuss her involvement with that organization. Additionally, her husband, who assisted her in filling out her application, testified that he knew that the application was confidential.

We decline to rely on Alhaddad's lack of knowledge as to the founding date, leader, and newsletter title of the AWCSW in assessing her credibility. "An adverse credibility finding….cannot be based on an irrelevant inconsistency." *Sylla,* 388 F.3d at 926. We do not believe that an individual volunteering for a 10,000 member organization would necessarily have knowledge of its precise history, its hierarchy of management or its newsletter's exact title. Evidence that she lacked knowledge of this information does not "go to the heart of" her asylum claim and is irrelevant to her credibility. *See Sylla,* 339 F.3d at 926.

Even absent the findings as to Alhaddad's lack of knowledge regarding the details of AWCSW, the discrepancies between her written application and oral testimony provided a sufficient basis for the Board's finding that Alhaddad was not credible. Substantial evidence supported the Board's adverse credibility finding.

C. Substantial evidence supported the Board's finding that Alhaddad had not established past persecution or a well-founded fear of future persecution

Alhaddad's claim of past persecution was based on two incidents, neither of which rose to the level of persecution. Alhaddad bases her claim on (1) an arm injury suffered as a result of being hit by Palestinian police at a demonstration and (2) a meeting with the Palestinian police in which she was threatened with imprisonment if she chose to participate in future demonstrations. Because neither of these incidents constituted past persecution, she is not entitled to a presumption of a well-founded fear of future persecution. *See* 8 C.F.R. § 208.13(b)(1).

8

Persecution involves "more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Almuhtaseb*, 453 F.3d at 750(citation omitted). It is insufficient if an applicant experiences "indiscriminate abuse, such as physical force or violence employed against a crowd of demonstrators." *Ceraj*, 511 F.3d at 593. While an isolated incident may in some cases be sufficient to constitute past persecution, "it must be correspondingly severe." *Mohammed v. Keisler*, 507 F.3d 369, 371 (6th Cir. 2007). Under this precedent, the episodes complained of by petitioner, while troubling, clearly fall short of past persecution. Alhaddad suffered no permanent injury to her arm as a result of being struck by police at the demonstration. Neither the demonstration incident nor the meeting with the police can compare to those isolated incidents which we have held to be sufficiently severe. *See, e.g.*, *Mohammed*, 507 F.3d at 371 (holding a three-day detention during which petitioner was slapped and kicked by police to be insufficient). Substantial evidence supported the Board's finding that Alhaddad did not experience persecution in the past.

Additionally, the fact that Alhaddad remained in Gaza for two years following the meeting at the police station with no further incidents indicates she has not experienced past persecution and has no well-founded fear of persecution in the future. We have held that an asylum claimant's ability to remain in her home country after claimed persecutory incidents without experiencing further persecution "indicates that her situation...was not sufficiently grave to constitute persecution." *Almuhtaseb*; 453 F.3d at 750 (holding that asylum applicant who remained in home country for six years following occurrence of claimed persecution failed to establish past persecution); *see also Mullai v. Ashcroft*, 385 F.3d 635, 638 (6th Cir. 2004)(finding that fact that petitioner waited over three months to leave her home country weakened her claim of past

persecution). Alhaddad argues that she stayed to finish her education. Whatever her reason was for staying, the fact that she was able to remain in the country peacefully without any interaction with the Palestinian Authority indicates that she would be able to return to Gaza without fear of persecution. Substantial evidence supported the Board's conclusion that Alhaddad had not suffered past persecution and had no well-founded fear of future persecution.

Because substantial evidence supports the Immigration Judge's conclusion that Alhaddad is not eligible for asylums, he "cannot satisfy the more stringent standard for withholding of deportation." *Daneshvar*, 355 F.3d at 625.

## II. Convention Against Torture

To qualify for relief under the Convention Against Torture, Alhaddad must establish a "particularized threat of torture." *Castellano-Chacon*, 341 F.3d at 551. 8 C.F.R. § 1208.18(a)(1) defines "torture" as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as ... punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

The term "torture" includes only "an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R § 1208.18(a)(2). To be considered torture, "an act must be specifically intended to inflict severe physical or mental pain or suffering." 8 C.F.R. § 1208.18(a)(5).

10

In considering whether it is "more likely than not" that an alien would be subject to torture were she returned to the country of removal, all evidence related to the chance of future torture should be assessed, including the following factors:

(i) Evidence of past torture inflicted upon the applicant;

(ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;

(iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and

(iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 208.16(c)(3).

Substantial evidence supported the Board's determination that it was not "more likely than not" that Alhaddad would be subject to torture if returned to Gaza. *See* 8 C.F.R.§ 208.16(c)(3). The past acts of violence and intimidation Alhaddad endured in Gaza at the hands of the Palestinian Authority certainly do not arise to the level of "an extreme form of cruel and inhuman treatment", 8 C.F.R. § 1208.18(a)(2), and therefore do not constitute past torture. In addition, Alhaddad herself testified that she had never been tortured by the Israeli government. She therefore cannot rely on the "evidence of past torture" factor to prove that she will "more likely than not" experience torture in the future. *See* 8 C.F.R. § 208.16(c)(3). Despite the poor human rights record issued by the State Department for the Palestinian Authority, her ability to remain in the country for two years following the claimed persecutory incidents further refutes her claim that she could not safely return to her home country. The statements asserted by Alhaddad in her oral testimony and written application, even if taken at face value, do not show that it is "more likely than not" that Alhaddad herself would be subject to such treatment. As such, she cannot succeed on her claim for relief under the CAT.

11

**CONCLUSION**

Substantial evidence supported the determination of the Immigration Judge and Board of Immigration Appeals that Alhaddad was ineligible for asylum, withholding of removal, and relief under the Convention Against Torture. Accordingly, we deny the petition for review.