NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1249n.06

No.  11-4335

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Dec 04, 2012*
DEBORAH S. HUNT, Clerk

VIKTOR IVANOVICH PALKA; JEVGENIA
ALEKSEEVNA POLENOVA,

    Petitioners,

v.

ERIC H. HOLDER, JR., Attorney General,

    Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

BEFORE:  MARTIN and BOGGS, Circuit Judges; COLLIER, District Judge.[*]

PER CURIAM.  Viktor Ivanovich Palka and Jevgenia Alekseevna Polenova, husband and wife, petition for review of an order by the Board of Immigration Appeals dismissing their appeal of a decision from an immigration judge (IJ), who denied their claims for asylum, withholding of removal, and protection under the Convention Against Torture.

The petitioners were born in Estonia when it was part of the Soviet Union.  However, they are ethnically Russian.  They entered the United States in 2008 and applied for the above-mentioned relief.  At a hearing before an IJ, the petitioners testified that they have not been granted full citizenship in Estonia, despite being born there, because they have not passed the required Estonian language test.  They also stated that they cannot receive a higher education in Estonia because they

_____

[*]The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

do not speak Estonian. Therefore, they are limited to unskilled work. Palka claimed to have suffered past persecution when he was arrested at a demonstration where ethnic Russians were protesting the removal of a statue of a Russian World War II soldier and ethnic Estonians were supporting the removal. He stated that police pushed him to the ground and dragged him two hundred yards to a van, causing bruising and abrasions on his back. Palka was held with a large number of other arrestees in a shipping terminal for several hours. He was forced to kneel on the floor until his name was called and he was released. Palka stated that he lost his job at a warehouse the next week, but that he was not told why. He claimed that he had been able to find only occasional work in construction after that. Palka presented medical records showing that he had been treated for a back strain six months later, which he claimed was related to his arrest.

Both petitioners' main source of trouble, however, allegedly came from three ethnically Russian men who believed that Palka had been released comparatively quickly after his arrest because he informed the police who the organizers of the demonstration were. Petitioners testified that these men came to their apartment and called Palka outside, where they engaged in a shouting match. A neighbor called the police. Palka testified that the police declined to do anything about the matter and that they stated that it would be best if the Russians "just killed each other." Petitioners claimed that these three men came to their apartment on other occasions, threatening them for being traitors to their fellow ethnic Russians. Petitioners moved into Palka's mother's apartment on the outskirts of Tallinn. However, the men came to this location, threw rocks at the windows, and stuffed burning rags under the front door. Petitioners testified that the harassment by these men was the main motivation for their decision to come to the United States.

The IJ found that the petitioners' testimony was not credible and that they had not established past persecution or a well-founded fear of future persecution. All claims for relief were therefore denied. The Board dismissed their appeal. The petitioners argue before us that the IJ erred in finding that their testimony was not credible and in finding that they did not suffer persecution for their Russian ethnicity, particularly economic persecution.

We review an IJ's credibility finding to determine whether it is supported by substantial evidence. *See Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). The IJ's adverse-credibility finding is supported by the record. Palka testified that he was pushed to the ground by the police. However, in his written statement in support of his asylum application, he claimed to have been clubbed. Statements from his mother and brother were also inconsistent on this issue. Palka's mother stated that Palka was mistreated after his arrest. His brother stated that Palka was brutally beaten and his back was broken. Additionally, his brother claimed that the three Russian men had beaten Palka, while Palka testified only to threats. Palka claimed to have been able to find only sporadic construction work, but Polenova testified that he had to take off work to visit the doctor six months later. Palka also claimed, without support, that his diagnosis of lumbar strain was related to his arrest and not to his work as a warehouseman and construction laborer. Thus, there were sufficient inconsistencies and gaps in the evidence to support the IJ's conclusion that the petitioners were not credible.

Moreover, the IJ also found that the petitioners had failed to establish past persecution. To the extent Palka relied on his arrest as past persecution, the IJ correctly noted that force used against a crowd of demonstrators on both sides of an issue does not demonstrate that Palka was specifically

targeted for abuse based on a protected ground. *See Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005). To the extent that the petitioners relied on their claim of economic persecution, Palka's unexplained loss of his job, inability to attend Estonian universities, and the difficulty in advancing to high levels of employment does not constitute persecution. *See Japarkulova v. Holder*, 615 F.3d 696, 700 (6th Cir. 2010). Moreover, it appears that Palka's mother and brother were all gainfully employed. *See Pascual v. Mukasey*, 514 F.3d 483, 489 (6th Cir. 2007) (holding that family remaining in country unpersecuted undercuts claim). The record also shows that nearly one-third of the Estonian population is Russian speaking, and that there are areas outside the capital where Russian speakers are the majority. Finally, to the extent that the petitioners claimed persecution by the three Russian men, they did not show that the Estonian government was unwilling or unable to control these men. *See Bonilla-Morales v. Holder*, 607 F.3d 1132, 1136 (6th Cir. 2010). Although a neighbor called the police due to noise when the men first came to the apartment of Palka's mother and the police did not file a report, Palka never spoke to those policemen and never called the police again, even when the men threw rocks at the apartment windows and tried to set the door on fire.

For the same reasons, the IJ did not err in concluding that the petitioners failed to establish a well-founded fear of future persecution. *See Ali v. Ashcroft*, 366 F.3d 407, 410-11 (6th Cir. 2004). Because the petitioners failed to meet the standard of eligibility for asylum, they necessarily failed to meet the higher standard for withholding of removal. *See Kaba v. Mukasey*, 546 F.3d 741, 751 (6th Cir. 2008). They also failed to establish that it is more likely than not that they will be tortured if they return to Estonia. Thus, they are not entitled to protection under the Convention Against Torture. *See Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004).

The petition for review is denied.